IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILY CHOYCE,<br><br>          Plaintiff,<br><br>     v.<br><br>FRIAR, et al.,<br>          Defendants. | No. 08 CV 202<br><br>JUDGE DER-YEGHIAYAN |

### MOTION TO RECONSIDER

NOW COMES the Plaintiff, by and through Horwitz, Richardson & Baker, LLC., and moves this Court to reconsider its Order dated June 24, 2008 dismissing this case, and in support thereof states the following:

### INTRODUCTION

This is a re-filed §1983 police misconduct case alleging, *inter alia*, excessive force and conspiracy. Specifically, Plaintiff was at the scene of her son's arrest and one or more police officers grabbed her from behind and threw her to the ground causing her injuries. Plaintiff was not charged with criminal activity as a result this incident. Plaintiff did not and could not observe the officer(s) who assaulted her as they attacked her from behind.

The initial action, *Choyce v. City of Chicago, et al.,* 07 CV 1790, was dismissed without prejudice to allow Plaintiff to file an amended complaint properly naming the individual officers. Plaintiff re-filed her case naming two individual defendants, pared down from twenty-seven, and unknown officers. Defendants moved to dismiss arguing, *inter alia*, that Plaintiff had still not properly named the individual defendant officers and therefore had failed to state a claim. On June 24, 2008, this Court granted Defendant's Motion. For the reasons stated below, the

1

dismissal was in error flowing from this Court's lack of knowledge regarding efforts undertaken by Plaintiff's counsel to identify the proper parties, and should be reconsidered.

## FACTS

Plaintiff's counsel has worked diligently to determine the identities of the officers responsible for Plaintiff's injuries and has identified, out of twenty-seven, the two officers believed to be involved. However, due to the particular facts of this case[1] other officer(s) may have been responsible and hence, Plaintiff named Unknown Officers as Defendants. Further, Plaintiff's counsel has worked industriously over the past 15 months to determine the identities of the officers who interacted with Plaintiff. The City of Chicago, through delays and denials, hindered Plaintiff's attempts.

### The 2007 Civil Case

On March 30, 2007, Plaintiff filed her initial complaint alleging, *inter alia*, excessive force, battery, and conspiracy against Unknown Officers and the City of Chicago. The City of Chicago answered said complaint on April 20, 2007 (Exhibit A, Answer to Complaint) generally claiming a lack of knowledge regarding each and every factual claim in the complaint. On May 31, 2007, this Court set a thirty day deadline for Plaintiff to amend the complaint to reflect the identities of the Unknown Officers. (Exhibit B, Docket 17, May 31, 2007). On June 4, 2007, Matthew Robison, one of Plaintiff's attorneys contacted Glenn Kevin Angel, an attorney for the City of Chicago, to initiate discovery relative to the identities of the unknown officers. On June 8, 2007, Mr. Robison provided defense counsel with the location of the incident to assist the City of Chicago in identifying the involved officers. (Exhibit C, June 8, 2007 Letter).

---

[1] Because the Chicago Police Officers responsible for the attack on Plaintiff pushed her from behind, Plaintiff was unable to identify, out of a large group of officers, the officer(s) who threw her to the ground.

2

On June 19, 2007, Plaintiff's counsel, Amanda Yarusso, spoke to City of Chicago's attorney, Ernest Mincy and, again, attempted to ascertain the identities of the unknown officers involved with Plaintiff. Mrs. Yarusso was told that the names would not be forthcoming until at least July 2, 2007, when the other attorney for the City of Chicago, Mr. Angel, returned from vacation. (Exhibit D, June 20, 2007 Letter). Because Defendant's Counsel would not, or could not, provide the names of the officers who were present on the scene, Mrs. Yarusso was forced to file a Motion for an Extension of Time to name the proper defendants. (Exhibit E, Docket No. 17, June 21, 2007). This Court granted said Motion on June 26, 2007, giving Plaintiff's counsel until July 16, 2007 to identify the names of the officers and until July 25, 2007 to amend the complaint.

On July 3, 2007, Glenn Angel, counsel for the City of Chicago produced an arrest report to Plaintiff's counsel.[2] (Exhibit F, July 3, 2007 Letter). The arrest report listed a number of officers but did not mention those who interacted with Plaintiff. On July 16, 2007, after requests from Mrs. Yarusso, Mr. Angel sent Attendance & Assignment sheets to Plaintiff's counsel. (Exhibit G, July 16, 2007 Letter). These reports list the names of on duty officers along with their assigned beat. The Attendance & Assignment sheets do not identify which officers interacted with Plaintiff. On July 18, 2007, Mr. Angel produced the Area File with lock up keepers report and log. (Exhibit H, July 18, 2007 Letter). Again, these documents do not indicate which officers were present at the scene of the incident, nor do they identify which officers interacted with Plaintiff. (Exhibit I, July 18, 2007 Letter).

On July 24, 2007, Mrs. Yarusso sent another letter to defense counsel requesting information regarding the identities of the officers responsible for injuring Plaintiff. Mr. Angel had not responded to calls the previous day or the week regarding this issue. (Exhibit I, First July

---

[2] Plaintiff's son, Cedric Choyce, was arrested during the subject incident. He is not a party to this litigation.

24, 2007 Letter). In this letter, Mrs. Yarusso requested the identities of the personnel in a beat listed on the arrest report and, further, that Mr. Angel make individual inquiries as to the personnel listed on the Attendance & Assignment sheets to determine which officers were present at the scene when Plaintiff was assaulted. Defendants responded to said letter on July 24, 2007. (Exhibit J, Second July 24, 2007 Letter). Mr. Angel stated that he had produced all documentation in his possession; he refused to make individual inquiry as to the identities of the officers present, and offered, instead, to produce a photo line up of officers assigned to the district.[3] Id. Plaintiff's counsel responded that she would like to discuss the matter (phone calls were not returned or were responded to with letters), and reiterated that defense counsel had a duty to speak to their police employees to determine who was at the scene. (Exhibit K, Third July 24, 2007 Letter).

On July 24, 2007, due to defense counsel's continued inability, or refusal, to identify the officers present at the scene, Plaintiff's counsel, once again, filed a Motion for, *inter alia*, Extension of Time to discover the names of the proper defendants. (Exhibit L, Docket No. 20, July 24, 2007). On July 26, 2007, this Court granted Plaintiff's motion, allowing an additional 30 days to discover the names of the officer present and amend the complaint. (Exhibit M, Docket No. 22, July 26, 2007).

On August 21, 2007, after several conversations with counsel for Plaintiff, the City of Chicago's attorney, Mr. Angel, finally produced copies of the event queries for the location of the incident. (Exhibit N, August 21, 2007 Letter). In this letter, Mr. Angel confirmed that, not only did beat 312 (a beat identified in the police report) respond to the scene, but an additional 15 to 20 other units responded as well. Id. Mr. Angel suggested that the City would need, at a

---

[3] Another pointless exercise, as the photos are usually out of date and Plaintiff was thrown from behind and did not observe the officer or officers who threw her.

4

minimum, an additional 60 days after this Court's deadline to identify the officers who were present on the scene and interacted with Plaintiff. Id. Based on this communication and representation by the City's attorney, Plaintiff's counsel, on August 28, 2007, moved this Court for another extension. (Exhibit O, Docket No. 23, August 28, 2007). This Motion was heard by this Court on August 30, 2007. (Exhibit P, Transcript). This Court granted said motion, and extended the time to identify the officers to October 26, 2007. (Exhibit Q, Order, Docket No. 25, August 30, 2007).

On October 31, 2007, Mrs. Yarusso, once again, sent a letter to City of Chicago's attorney, Mr. Angel requesting the names of the officers present at the scene and updating the medical losses sustained by Plaintiff in furtherance of settlement negotiations. (Exhibit R, October 31, 2007 Letter). In a letter received on November 1, 2007, Mr. Angel, after nearly six months of requests, finally identified 27 officers who were assigned to the beats that responded to the scene of Plaintiff's injury. (Exhibit S, October 30, 2007 Letter). However, this letter did not identify which of these interacted with Plaintiff. Id.

On November 14, 2007, at this Court's status hearing, Plaintiff's counsel, Mrs. Yarusso reported that she was prepared to amend the Complaint, however, due to the number of officers identified, she wanted approval of the Court. (Exhibit T, Transcript of November 14, 2007). Plaintiff's counsel informed this Court that Plaintiff intended to name 27 officers in the Amended Complaint. (Exhibit T, Page 3, Lines 2-6). This Court then set dates for Defendants to answer and set a status hearing for December 18, 2007. (Exhibit T, Page 4, Lines 1-12). Plaintiff's counsel filed the Amended Complaint, that day, naming 27 Defendant Officers. (Exhibit U, Docket No. 27, November 14, 2007). On November 16, 2007, the City of Chicago answered the Amended Complaint (Exhibit V, Docket No. 29, November 16, 2007) again

generally deny knowledge of any of the material facts in said complaint. Further, on November 16, 2007, Plaintiff's Counsel issued summons to the newly named Defendants. (Exhibit W, Docket Nos. 30, 33-37 November 16, 2007).  In order to clarify which officers interacted with Plaintiff, on November 29, 2007, Plaintiff's counsel issued Requests to Admit and served them upon the City of Chicago. (Exhibit X).  These Requests to Admit were due to be answered on or before December 29, 2007.  Had the City of Chicago had an opportunity to answer these Requests to Admit, the identities of the officer or officers who directly interacted with Plaintiff would at last be known. [4]

On December 17, 2007, one day prior to the scheduled status hearing and eight days before the City of Chicago was due to finally, after six months of delay, provide responses to Plaintiff's Request to Admit which would, once and for all, identify the officers who assaulted Plaintiff, this Court, *sua sponte*, dismissed the 2007 action "without prejudice for Plaintiff to file a new and timely action and properly name individual officers allegedly involved in the constitutional deprivation." (Exhibit Y, Docket No. 41, December 17, 2007).

On December 27, 2007, Plaintiff's counsel filed a Motion to Amend the complaint, because she had identified two officers who were most likely those who were directly involved in assaulting Plaintiff. (Exhibit Z, Docket No. 68, December 27, 2007).  On January 3, 2008, this Court denied said motion as untimely, because complaint had already been dismissed. (Exhibit AA, Docket No. 71, January 3, 2008).

---

[4] See *Taborn v. Unknown Officers*, 00-cv-652 (ND. Ill, 2000) 2000 WL 138908 and 2001 WL 199516, in which Judge Darrah scolded the City of Chicago, holding that Corporation Counsel **must speak** to officers who were at the scene when a request to admit so directs. *Id.*  Failure to do so result in an admission as violative of the federal rules. *Also see T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.,* 174 F.R.D. 38, 42 (S.D.N.Y.1997) "legal entities are required to interview their own employees." with regards to a Request to Admit.  *Id.*

The 2008 Civil Case

On January 9, 2008, Plaintiff's counsel filed the instant action against the two named Defendant Officers and against Unknown Officers. (Exhibit BB, Docket No. 1, January 9, 2008). The City of Chicago appeared, via counsel, on March 4, 2008 and promptly moved for an extension of time to answer on March 5, 2008.

On March 10, 2008, Mrs. Yarusso had a Rule 26(f) conference with attorneys for the individual defendants and the City of Chicago, David Selmer, Rita Moran and Diane Cohen, and set forth a discovery plan to identify any other officers responsible for the constitutional deprivations set forth in the complaint. (Exhibit CC, March 10, 2008 Letter).  On April 4, 2008, the two named defendants and the City of Chicago moved to dismiss. (Exhibit DD, Docket No. 19, April 4, 2008).  This Motion was based on the *Res Judicata* effect of a dismissal without prejudice (Exhibit DD, ¶¶ 7-8) and a claim that the complaint was vague as to the specific allegations against each defendant officer. (Exhibit DD, ¶ 9).

On May 23, 2008, Plaintiff's counsel issued discovery requests including Requests to Admit (Exhibit EE) to Defendant City of Chicago to determine if any of the other officers previously disclosed had interacted with Plaintiff.  In response to these requests, attorneys for the City of Chicago and Individual Defendants, Ms. Moran and Mr. Selmer, issued a letter objecting to the timing of these requests as premature and refused to answer.  (Exhibit FF, May 27, 2008 Letter).  On May 30, 2008, Plaintiff's counsel, Abbas Merchant, responded to Defendants' objections and informed Defendants that Plaintiff's discovery requests were indeed proper as a Rule 26(f) conference had previously occurred over one and a half months previously. (Exhibit GG, May 30, 2008 Letter).  Additionally, on May 30, 2008, the City of Chicago's attorney, Ms.

7

Moran, requested an extension of time of seven days, or until June 30, 2008 to answer discovery. Plaintiff's counsel granted this request. (Exhibit HH, June 4, 2008 Letter).

On June 24, 2008, six days before Defendants responses were due, at which time Plaintiff would finally be provided the identity of the officers who had thrown her down her and caused her injuries, this Court ruled on Defendant's Motion to Dismiss. (Exhibit II, Docket No. 31). This court dismissed the instant case citing to Plaintiff's inability to state the <u>specific actions</u> the two named Defendant Officers or the Unknown Defendant Officers committed, other than throwing her to the ground and conspiring to injure her, and that Plaintiff's complaint still included unknown officers as defendants.

## LEGAL STANDARD

A complaint should not be dismissed for failure to state claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of claim that would entitle plaintiff to relief. Fed.R.Civ.Proc. 12(b)(6).  While the Court has discretion to dismiss a case, such action is disfavored and the Court's discretion is limited.  In fact, absent a clear record of delay or willful contempt, a court's discretion is limited to application of lesser sanctions designed to achieve compliance with court orders and expedite proceedings. *Sussman v. Salem, Saxon and Nielsen, P.A.*, 154 F.R.D. 294 M.D.Fla.,1994  Fed.R.Civ.Proc. 41(b).  Further, a court should not dismiss a claim unless amendment would prove futile or said complaint could not survive a subsequent motion to dismiss. *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991).

Additionally, a motion to reconsider is appropriate when the court has obviously misunderstood a party's position, the facts or the applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990).

**ARGUMENT**

1. **Defendant's Delay and Refusal to Make Proper Inquiry Prevented Plaintiff from Identifying the Officers that Threw Her to Ground.**

Plaintiff's counsel has worked zealously to identify the officers responsible for violating Plaintiff's constitutional rights. In addition to exhausting Plaintiff's memory of the incident, Plaintiff's counsel exchanged in excess of ten letters and engaged in multiple phone calls (at least six), continuously and over a period of months, with counsel for the City of Chicago imploring them to provide information that would lead to the identification of officers who assaulted Plaintiff. Further, Plaintiff's counsel brought this matter before the Court five times hoping to hasten this process as counsel for the City was moving slow as molasses in providing Plaintiff's counsel with *any* information regarding the incident. Plaintiff's counsel engaged in extensive and zealous advocacy in attempting to follow this Court's orders and identify the Unknown Officers. These attempts included, but were not limited to:

Unfortunately, Plaintiff and Plaintiff's counsel were obliged to rely on counsel for the City of Chicago to identify these officers. Plaintiff was not provided an opportunity to view, much less identify, the unknown officers before they threw her to the ground, as they attacked her from behind. Plaintiff's counsel took every step possible to accelerate this process, yet ultimately, was unable to due to delays caused by the City of Chicago.

Plaintiff filed her initial lawsuit on March 30, 2007. The City of Chicago, the sole entity with knowledge of the identities of the officers present when Plaintiff was assaulted, withheld information for seven months, until November 1, 2007, that would have identified those officers responsible for violating Plaintiff's constitutional rights. Even after identifying the officers who responded to the scene, the City of Chicago would not identify which officers interacted with Plaintiff. The City of Chicago refused to gather this seemingly simple information and refused

to make individual inquiry to its officers as to their involvement with Plaintiff. As soon as the City of Chicago produced the names of the Officers who were present at the scene, Plaintiff's counsel tendered Requests to Admit to the City of Chicago to determine which, of the 27 officers, assaulted Plaintiff. The responses to the Requests to Admit were due on or before December 27, 2007. However, the Complaint was dismissed (with leave to re-file) on December 17, 2007. Had an additional ten days elapsed, Plaintiff would have been able to identify, with certainty, the officers who pushed her and caused her injuries. The City of Chicago would have been required to make direct inquiries and speak to its employees regarding this incident. See *Taborn v. Unknown Officers*, 2001 WL 199516; see also *Taborn v. Unknown Officers*, 2000 WL 138908 and *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.,* 174 F.R.D. 38, 42 (S.D.N.Y.1997).

Once this case was re-filed, Defendants continued their dilatory conduct, refusing to engage in discovery and refusing to identify which officers assaulted Plaintiff.[5] Plaintiff's counsel, once again, was forced to issue Requests to Admit directed at identifying which of the 27 officers interacted with Plaintiff. The responses to these requests were due June 30, 2008. However, the re-filed Complaint was dismissed with prejudice on June 24, 2008. Despite Plaintiff's counsel's best efforts, Plaintiff was unable to identify which additional officers threw Plaintiff down causing her injury and in violation of her constitutional rights.

As a result of Defendants' tardiness and refusal to engage in a cooperative investigation with its employees, Plaintiff has been denied her right to pronounce her constitutional rights. Plaintiff should not be prejudiced as a result of Defendants inexcusable delay, nor should

---

[5] Further, this Court, during a November 14, 2007 status hearing limited the discovery in this case to 'informal discovery' in determining the identity of the officers involved. Had Plaintiff been allowed to engage in formal discovery at this time, Plaintiff's could have propounded discovery to Defendant City of Chicago that would have been due prior to the date this Court terminated the 2007 action.

Defendants be rewarded for such tactics. Plaintiff was not afforded a meaningful opportunity to engage in discovery that could identify the officers responsible for her assault. On two occasions, Plaintiff was days away from identifying the officers that injured her, and on both occasions this Court dismissed her complaint prior to Plaintiff receiving the necessary information.

Plaintiff has easily met her burden under a motion to reconsider as illustrated in *Anderson v. United Auto Workers*, 738 F.Supp. 441. Had this Court known of Plaintiff's diligence in pursuing the identities of the Unknown Officers, this case would not have been dismissed. Had this Court known of the resistance the City of Chicago demonstrated in obtaining these names, it would not have dismissed this case. Even if this Court had only been aware of the pending Requests to Admit, this case would not have been dismissed. Armed with all of this new information, this Court should reconsider its dismissal of Plaintiff's Complaint, reinstate said action, and order Defendants to provide full answers under diligent personal inquiry to Plaintiff's Request to Admit.

In summation, Plaintiff's counsel engaged in extensive and zealous advocacy in attempting to follow this Court's orders and identify the Unknown Officers. These attempts included, but were not limited to:

- Sending, in excess of ten, letters to defense counsel requesting their assistance in providing information regarding the underlying incident and identification of those officers responsible for violating Plaintiff's constitutional rights;

- Filing motions before this Court requesting more time to identify these officers and, concurrently, notifying the Court of concerns regarding identification;

- Engaging in numerous phone calls with defense counsel in regards to this identification issue and their failure to provide the necessary information[6]; and

---

[6] Plaintiff's can document at least six additional phone calls made regarding the issue of the identity of the Unknown Officers.

11

- Appearing at least five times before this Court and explaining the difficulties Plaintiff was experiencing identifying these officers as a result of the City's inability to provide the required information.

None of the above would have been necessary if Defendant had complied with Plaintiff's counsel's requests and their obligations under the Federal Rules of Civil Procedure and investigated which officers were on the scene. Additionally Plaintiff's counsel has issued 162 Requests to Admit, which the City of Chicago has failed to respond to. These requests would have solved the problem of identification in short order, had the City followed it's obligations.

**2.    The Amended Complaint Provides Ample Factual Allegations to Put Defendant's on Notice of the Claims against Them.**

In dismissing the 2008 complaint, this Court relied heavily on *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F. 3d 663 (7th Cir. 2007), *Erickson v. Pardus*, 167 L.Ed.2d 1081, 2007 and *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955 (2007). Citing to these cases, this Court held Plaintiff had not stated a claim because she failed to identify the identities of all officers involved in her claims - a fact necessary to put these Defendants on notice of her claims. Further, this Court stated that Plaintiff's failure was compounded as Plaintiff's complaint still included, along with two named officers, "Unknown Officers" as Defendants, one year after her initial claim was filed.[7] This position was reached before the Court had a full understanding of the effort Plaintiff had undertaken to identify these officers or the difficulties caused by Defendants in ascertaining the identities of the proper Defendants. Moreover, this holding is not a proper interpretation of Plaintiff's 2008 Complaint, which alleges plentiful facts to support Plaintiff's claims as directed against the Defendants.

---

[7] However, complaints are not insufficient, and survive motions to dismiss, even where there are unknown defendants listed as parties. See *Ross v. Kreke*, 2008 WL 818315 (S.D.Ill. 2008) (in a §1983 action, the complaint listing only the Sheriff and multiple unknown officer defendants survived a Motion to Dismiss); *O.D. Sheppard v. J.W.Fairman*, 1994 WL 532127, (7th Cir. 1995) (the court dismissed, from a complaint alleging a §1983 indifference to medical needs claim, the claims against the named defendants, yet left in tact the claims against the unknown defendants where the claims were properly alleged in all other respects).

12

The 2008 Amended Complaint (Exhibit JJ, Docket 8, Amended Complaint Dated January 23, 2008) contains numerous facts regarding Plaintiffs claims. The Amended Complaint alleged as follows:

- Plaintiff, LILLIE CHOYCE is an Illinois resident and citizen of the United States.
- The DEFENDANT OFFICERS agents of the City, acting under color of law
- The date of the occurrence is September 9, 2006
- The DEFENDANT OFFICERS were violent towards the plaintiff;
- One of more of the officers threw her to the ground
- Plaintiff was present at the scene of an altercation in which she was not involved.
- Plaintiff sustained injuries due to being thrown to the ground.
- The DEFENDANT OFFICERS violated Plaintiff's Fourth Amendment rights.
- The DEFENDANT OFFICERS conduct was in the scope of their employment
- The DEFENDANT OFFICERS are sued in their individual capacity.
- The DEFENDANT OFFICERS were on duty;
- The Plaintiff did not obstruct justice.
- The Plaintiff did not resist arrest.
- The Plaintiff did not batter or assault any of the DEFENDANT OFFICERS.
- The DEFENDANT OFFICERS used an unreasonable and unnecessary amount of force.
- Plaintiff suffered serious physical and emotional injury.
- The injury will continue into the future.
- This injury occurred at the time of the incident, continues now, and will continue into the future. *Id.*

Additionally the Amended Complaint details extensive facts regarding Plaintiff's Conspiracy and *Monell* claims. (*Id.* ¶¶ 9 to 13)

Even under the pleading standard promulgated by *Bell Atlantic,* and construed by the Seventh Circuit in *Airborne Beepers*, Plaintiff has clearly met her burden. As this Court stated this year in *Newman v. Apex Financial Group, Inc., et. al.,* 07 C 4475, 2008 WL130924, (N.D.Ill.), under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action....' " *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the

13

complaint" and that "[m]atching facts against legal elements comes later"). The Plaintiff need not allege all of the facts involved in the claim and Plaintiff can plead conclusions. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *Kyle,* 144 F.3d at 455. However, any conclusions pleaded must " 'provide the defendant with at least minimal notice of the claim,' " *Kyle,* 144 F.3d at 455 (quoting *Jackson v. Marion County,* 66 F.3d 151, 153-54 (7th Cir.1995). *Newman* at 2. Here Plaintiff has notified Defendants of her injuries, the cause behind them, two officers believed to be responsible, and the date of the incident, hardly sketchy details.

What is required under *Bell Atlantic Corp* and *Airborne Beepers & Video, Inc.* is that a complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence. In fact, as the Seventh Circuit stated reversing the dismissal of an action using the *Bell Atlantic* standard, "A plaintiff must provide only enough detail in the complaint to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir., 2008).

Moreover, the Seventh Circuit has acknowledged on numerous occasions that *Bell Atlantic* did not change the notice pleading standard; rather, it clarified that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic,* 127 S.Ct. at 1964-65. ; *see also EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776-77 (7th Cir.2007); *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663 (7th Cir.2007). Although this does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1974; *see also St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 2007 WL 2669403 at 7 (7th Cir. Sept.13, 2007). The Seventh Circuit

read *Bell Atlantic*, together with the Supreme Court's decision two weeks later in *Erickson v. Pardus,* ---U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), and observed that "we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers,* 499 F.3d at 667.

To the extent that *Bell Atlantic* has changed the federal pleading standard, it applies, only to complex actions or complaints on certain subjects understood to raise a high risk of abusive litigation, a requirement that Plaintiff state factual allegations with greater particularity than that required by the general rule governing pleadings. *Bell Atlantic,* 127 S.Ct. at 1976. The Supreme Court has also clarified the importance of the eliminating purely speculative claims where discovery, can be overwhelmingly expensive such as in an antitrust case. *Associated Gen. Contractors of Cal. Inc., v. Carpenters*, 459 U.S. 519, 528. In such a case, the Seventh Circuit found, interpreting *Bell Atlantic*, that where Plaintiff can not plead enough information, factual or argumentative to indicate that that he has a substantial case, a defendant should not be forced to undergo costly discovery. *Limestone Development Corp. v. Village of Lemont, Illinois,* 520 F.3d 797, C.A.7 (Ill.), 2008. Here, Plaintiff's complaint raises a wealth of facts identifying the theory of liability, the constitutional violation, the nature of the injury, the date of the injury, who was involved (as known to Plaintiff), how she was injured, that her injury will continue to the future, that the officer's conduct was excessive, etc. Clearly, Defendants know Plaintiff's theory, how the injury occurred, who, at least two of the officers[8] are, that they used excessive force (as alleged). Plaintiff's complaint is not theoretical, speculative, unsubstantiated, impossible, futile

---

[8] Defendants can easily speak to these officers to gather more information. Further, Defendants have all of the police reports and attendance sheets. It is easy for the City to Defend. Traditional discovery would flesh out the rest of the issues.

and/or any of the other limitations imposed on the type of complaint, pursuant to *stare decis*, that are grounds for dismissal.

In her 2008 case Plaintiff alleged numerous facts which would put Defendants on notice of her claims and easily contains enough facts to make relief plausible on its face. Plaintiff claims, *inter alia*, that one or more officers, without provocation or justification, and under color of law, threw her to the ground and injured her. She further alleges that these officers then conspired to cover up her injuries, thus injuring her further. Whether Plaintiff has pleaded enough facts to prove her case at this stage is irrelevant. Defendants are on notice and Plaintiff far exceeded her burden under the Federal Notice Pleading Standard.

Because Plaintiff's complaint easily reaches the standards set forth by this Court in *Newman v. Apex Financial Group, Inc., et. al.* but also those illustrated by the Seventh Circuit and the Supreme Court, Plaintiff's 2008 Amended Complaint should not have been dismissed, and this Court should reconsider and reverse its June 24, 2008 Order, dismissing said Complaint.

## CONCLUSION

Plaintiff's counsel, for the past 15 months has exercised extreme diligence in pursuing her cause against the City of Chicago and certain police officers who, *inter alia*, without provocation threw her to the ground and conspired to injure her. The City of Chicago has hindered and delayed all of the good faith efforts Plaintiff's counsel has made to identify the offending officers. As detailed above, it took seven months before the City of Chicago would even disclose the names of the officers on the scene in Plaintiff's 2007 suit. Because this Court was unaware of Plaintiff's efforts or of Defendant's dilatory actions, this Court dismissed Plaintiff's Complaint mere days before she could possibly comply with this Court's orders.

16

Upon refiling her case in her 2008 civil action, Plaintiff once again diligently attempted to comply with this Court's orders. However, once again, due to a lack of cooperation and delay tactics by the City of Chicago, and Plaintiff's counsel's professional courtesy in granting the City of Chicago an extension to answer discovery, Plaintiff was once again unable to fully comply with this Court's orders. Because of this lack of information relative to the respective conduct of the parties, this Court erred in granting Defendant's motion to dismiss without considering the causes of delay and should reverse it's dismissal of Plaintiff's 2008 complaint.

Additionally, non-withstanding the City of Chicago's refusal to make a good-faith effort to comply with discovery requests, Plaintiff, in her 2008 complaint was easily able to list enough facts to put Defendants on notice of her claims and to give them an opportunity to adequately defend themselves under the Federal notice pleading standard as expressed by the Supreme Court in *Bell Atlantic* and the Seventh Circuit in *Concentra Health Servs., Inc.,* and *Airborne Beepers & Video.* This Court, therefore, erred when it held Plaintiff to a fact pleading standard, not a notice pleading standard, and dismissed her case. This Court should reconsider it June 24, 2008 Order dismissing Plaintiff's Amended Complaint, reinstate said case, and order the City of Chicago to Respond to Plaintiff's requests to Admit within seven days.

WHEREFORE, for the reasons stated above, Plaintiff respectfully request this Honorable Court to reconsider its June 24, 2008 Order Dismissing Plaintiff's Amended Complaint, and Order any other such relief as this Court deems fit and just.

    s/ Abbas Merchant_____
    Attorney for the Plaintiff
    Abbas Merchant

**HORWITZ, RICHARDSON & BAKER LLC**
Two First National Plaza
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076