# EXHIBIT  DD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LILLIE CHOYCE, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Der-Yeghiayan |
| | ) | Magistrate Judge Valdez |
| v. | ) | |
| | ) | |
| JOHNSON, et al. | ) | 08 C 202 |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant City of Chicago, by its attorney Mara S. Georges, Corporation Counsel of the

City of Chicago, and Mark Friar and Darrel Johnson, by their attorney David N. Selmer,

Assistant Corporation Counsel for the City of Chicago, move to dismiss Plaintiff's amended

complaint, as follows:

### INTRODUCTION

1.     On January 23, 2008, Plaintiff filed an Amended Complaint at Law against the

City of Chicago, two named officers, Mark Friar and D.F. Johnson, and unknown defendant

officers.  Plaintiff collectively refer to the named and unknown officers in her complaint as

"DEFENDANT OFFICERS."  Plaintiff claims that "some or all of the Defendant Officers"

engaged in excessive force and a conspiracy.  Plaintiff also alleges a boiler-plate Monell claim

against the City.

2.     The allegations in Plaintiff's Amended Complaint are the same ones Plaintiff

previously pled in Lillie Choyce v. Friar et al., 07 C 1790, a case that this Court dismissed on

December 17, 2007.  The only differences between the dismissed 2007 complaint and the newly

filed 2008 Amended Complaint is that 1) Plaintiff spells her first name differently ("Lillie"

versus Lilly"); and 2) Plaintiff removes all of the names of the "DEFENDANT OFFICERS," except for Friar and Johnson and replaces the names removed with "unknown officers." Nonetheless, the allegations remain the same as the 2007 complaint in that in each and every count she directs her allegations to the collective "DEFENDANT OFFICERS," without alleging any specifics as to which officers she claims did what.

3.    The 2007 complaint was dismissed because the "vague allegations in regard to the conspiracy claims [were] insufficient to meet the federal notice pleading standard."[1]  For the same reasons, the Court dismissed Plaintiff's claims regarding excessive force by "some or all of the Defendant Officers."  Finally, the Court dismissed Plaintiff's Monell claims because Plaintiff failed to provide "sufficient allegations relating to any constitutional deprivations caused by the individual officers"; therefore, "there could be no corresponding Monell claims."  Id.

4.    In dismissing Plaintiff's 2007 complaint, the Court noted that Plaintiff had been given the opportunity to conduct discovery in order to properly identify the individual officers, she did not allege the names of any specific officers that allegedly threw her to the ground or engaged in a conspiracy.

5.    Finally, in dismissing Plaintiff's 2007 complaint without prejudice, the Court provided that Plaintiff could file a "new and timely action and properly name individual officers allegedly involved in the constitutional deprivation."

6.    On December 27, 2007, Plaintiff filed a motion for leave to file an amended complaint.  The motion was noticed for January 3, 2008.  On January 3, the Court denied the motion, holding it was to late to seek leave to amend the complaint, citing to Sigsworth v. City of

---

[1]The Court's December 17, 2007 Order is attached as part of Group Ex. 1.

2

Aurora, Ill., 487 F.3d 506, 511 (7th Cir. 2007) (citing Paganis v. Blonstein, 3 F.3d 1067, 1072 (7th Cir. 1993).[2]

## PLAINTIFF'S COMPLAINT SHOULD BE BARRED
## UNDER THE DOCTRINE OF *RES JUDICATA*

7.     Plaintiff's case should be barred under the doctrine of *res judicata* because it raises the same issues that were raised and resolved in Plaintiff's 07 C 1790 litigation.  As this Court has noted, the doctrine of res judicata is "utilized by the courts to bar 'relitigation of claims that were or could have been asserted in an earlier proceeding." Trans Helicopter Service v. Jet Support Services, Inc., 2004 WL 2921856 *3 (December 14, 2004)[3], citing D&K Properties Crystal Lake v. Mutual Life Ins. Co. of New York, 112 F.3d 257, 259 (7th Cir. 1997).

8.     There are three required elements for the doctrine of *res judicata*: (1) an identity of the parties or their privies; (2) and identity of the causes of action; and (3) a final judgment on the merits.  All these elements exist in Plaintiff's 2007 and 2008 litigation.  The same defendants, known and unknown are named; the causes of action are the same and based on the same set of facts.  Accordingly, given the Court's January 3, 2008 order, it appears that there was a final judgment on the merits in the 2007 litigation; therefore, Plaintiff's 2008 complaint should be dismissed.[4]

---

[2]The January 3, 2008 Order is attached as part of Group  Ex. 1.

[3]This decision is attached as part of Gr. Ex. 2.

[4]Even if there were no final judgment on the merits, Plaintiff's recourse would be to file under the 2007 caption, not file a new case.

**PLAINTIFF'S 2008 COMPLAINT SUFFERS THE SAME DEFICIENCIES AS HER2007 COMPLAINT; THEREFORE, PLAINTIFF'S 2008 SHOULD BE DISMISSED**

9.     In the event this Court does not apply the doctrine of res judicata to Plaintiff's 2008 complaint, the 2008 complaint should be dismissed because it contains the same vague allegations against "some or all of the Defendant Officers" as the 2007 complaint.  Likewise, because Plaintiff failed to provide sufficient allegations relating to any constitutional deprivations caused by the individual officers, as she did in her 2007 litigation, there can no corresponding Monell claims.  See paragraph 2 above.

10.     Further, Plaintiff's Monell claims (Plaintiff's Complaint, §11 and sub-parts a-o), fail to establish the existence of a cognizable municipal custom, policy or practice that encompass the wide spectrum of alleged misconduct.  See Chaparro v. Powell, et al., (07 C 5277) (January 1, 2008)[5].  As in Chaparro, Plaintiff's allegations are so amorphous that they effectively expose a municipality to *respondeat superior* liability.   Examples of these amorphous allegations are:

It is the custom, practice and/or policy of police officers, their supervisors, agents or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions in connection with excessive force and other acts of misconduct:

a.     generate false documentation to cover-up for the misconduct of fellow police officers; . . .

j.     fail to provide adequate sanctions or discipline to officers who falsity police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence without being disciplined or significantly disciplined for engaging in behavior which violates the rules, polices and/or procedures of the CITY OF CHICAGO Police Department; . . .

---

[5]The order and decision is attached as part of Group Ex. 2.

       m.     fail to properly investigate officers who use excessive force upon citizens in such a way that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior . . . .

11.    Plaintiff fails to allege a direct causal link between any municipal custom, policy or practice to his injury.  Instead, he asserts, as Judge Conlon noted in <u>Chaparro</u>, a "general lawlessness among CPD officers caused the violations surrounding his arrest," which is not sufficient under notice pleading rules.

12.    Plaintiff's complaint fails to provide factual support for its claims and instead alleges merely "labels and conclusions" that are insufficient to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007).  Accordingly, like Plaintiff's 07 complaint, and the complaint in <u>Chaparro</u>, Plaintiff's 2008 complaint should be dismissed.

**WHEREFORE**, Defendants respectfully request that this Court dismiss Plaintiff's complaint with prejudice under the doctrine of *res judicata*.  In the alternative, Plaintiff's complaint should be dismissed for failure to state a claim.

**DATED:  APRIL 4, 2008**

                                         Respectfully submitted,

                                         MARA S. GEORGES
                                         Corporation Counsel

                              By:        /s/ Diane S. Cohen
                                         Diane S. Cohen
                                         Rita Moran
                                         Assistants Corporation Counsel

30 N. La Salle, Ste. 1020
Chicago, Illinois 60602
(312) 744-2836/2-9866

                                         Respectfully submitted,

                                         /s/ David N. Selmer
                                         David N. Selmer
                                         Assistant Corporation Counsel
                                         Attorney for Defendants Friar and Johnson

30 N. La Salle, Ste. 1400
Chicago, Illinois 60602
(312) 744-6905

## CERTIFICATE OF SERVICE

I, Diane Cohen, an attorney, hereby certify that pursuant to Local Rule 5.9, in accordance with the U.S. District Court for the Northern District of Illinois, Eastern Division's General Order on Electronic Case Filing, Defendant s' Joint Motion to Dismiss, April 4, 2008, to:

Blake Horwitz
155 N. Michigan Ave., Ste. 723
Chicago, IL 60601

By: /s/Diane Cohen
DIANE COHEN

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1790 | **DATE** | 12/17/2007 |
| **CASE TITLE** | Lily Choyce vs. City Of Chicago | | |

### DOCKET ENTRY TEXT

For the reasons sated below, the instant action is hereby dismissed without prejudice for Plaintiff to file a new and timely action and properly name individual officers allegedly involved in the alleged constitutional deprivation. All pending dates and motions are hereby stricken as moot. Civil case terminated.

■[ For further details see text below.]                                                                    Docketing to mail notices.

---

### STATEMENT

On May 31, 2007, and on subsequent dates we gave Plaintiff Lillie Choyce ("Choyce") time to conduct discovery to determine the names of the unknown officers that Choyce listed as Defendants in her original complaint. We also gave Choyce time to file an amended complaint, properly naming the specific Defendant officers. Although Choyce was allowed to conduct discovery to identify the proper Defendant officers, Choyce's amended complaint is vague and fails to identify specific officers involved in the alleged constitutional deprivations against her.

Choyce alleges in her amended complaint that on September 9, 2006, she was "thrown down to the ground by one or more of the DEFENDANT OFFICERS." (A. Compl. Par. 4). However, despite the fact that Choyce has been given the opportunity to conduct discovery in order to properly identify the individual officers, Choyce does not allege the names of any specific officers that allegedly threw her to the ground. Instead, Choyce alleges vaguely and generally that she was thrown to the ground "by one or more of the DEFENDANT OFFICERS." (A. Compl. Par. 4). In addition to not identifying which officers allegedly threw Choyce to the ground, Choyce has not even named which Defendant officers were at the scene and who were connected with her alleged constitutional deprivations. It is apparent from the large number of

07C1790 Lily Choyce vs. City Of Chicago

**EXHIBIT**

Gr. Ex. 1

Page 1 of 3

## STATEMENT

officers named as Defendants in the amended complaint that instead of naming the officers that Choyce believes have violated her constitutional rights, Choyce has named twenty seven officers and has asserted that they were all members of a conspiracy against Choyce. Choyce provides no factual allegations showing how all twenty seven Defendant officers were part of a conspiracy perpetrated against her. The vague allegations in regard to the conspiracy claims are insufficient to meet the federal notice pleading standard and we dismiss the conspiracy claims. *See E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(stating that a plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" and, "if they do not, the plaintiff pleads itself out of court")(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)).

In regard to the individual claims brought against Defendant officers, the allegation by Choyce that "one or more" of the twenty seven officers named as Defendants threw Choyce to the ground does not provide Defendants with sufficient notice of the claims brought against them. (A. Compl. Par. 4); *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)(stating that "[t]aking *Erickson* and *Twombly* together, [the Court] understands the [U.S. Supreme Court] to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8"). Choyce alleges only that she was thrown to the ground once, (A. Compl. Par. 4), and it is apparent that Choyce is not claiming that all twenty seven officers threw her to the ground at once. Thus, Choyce has failed to provide sufficient allegations to state a claim against the twenty seven named individual officers in this case. We have given Choyce an opportunity to conduct discovery and to properly name individual officers and Choyce has failed to do so, opting instead to sue twenty seven officers without identifying their involvement. To require all such officers to participate in this action, without justification, would be unfair to the individual officers, who were not involved in the alleged constitutional deprivation. In addition, to allow this action to continue in the present posture would be an inefficient use of the officers' and this court's time and resources. Therefore, we dismiss the claims brought against the twenty seven named individual officers. Finally, since Choyce has not provided sufficient allegations relating to any constitutional deprivations caused by individual officers, there

07C1790 Lily Choyce vs. City Of Chicago

## STATEMENT

can be no corresponding *Monell* claims and we dismiss the *Monell* claims as well. This action is dismissed without prejudice for Choyce to file a new and timely action and properly name individual officers allegedly involved in the alleged constitutional deprivation.

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1790 | **DATE** | 1/3/2008 |
| **CASE TITLE** | Lily Choyce vs. City Of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

This matter is before the court on Plaintiff's motion for leave to amend the complaint [69]. This action was dismissed on December 17, 2007, without prejudice. It is thus too late to seek leave to amend the complaint in this action. *See Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511 (7th Cir. 2007)(citing *Paganis v. Blonstein,* 3 F.3d 1067, 1072 (7th Cir. 1993)). Therefore, we deny the motion for leave to amend the complaint [69].

Docketing to mail notices.

| | Courtroom Deputy Initials: | maw |
|---|---|---|

Not Reported in F.Supp.2d, 2004 WL 2921856 (N.D.Ill.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
TRANS HELICOPTERE SERVICE, a French limited company, Plaintiff,
v.
JET SUPPORT SERVICES, INC., a Delaware corporation, Defendant.
JET SUPPORT SERVICES, INC., a Delaware corporation, Counterclaimant,
v.
TRANS HELICOPTERE SERVICE, a French limited company, Counterdefendant.
No. 03 C 0498.
Dec. 14, 2004.

<u>Timothy J. Storm</u>, Dawn E. Kahn, Timothy J. Storm P.C., Chicago, IL, for Plaintiff.

<u>Monte Loren Mann</u>, <u>Courtney D. Tedrowe</u>, Novack & Macey, Chicago, IL, for Defendant.

*MEMORANDUM OPINION*

<u>DERYEGHIAYAN</u>, J.

**\*1** This matter is before the court on Defendant Jet Support Services, Inc.'s ("Jet") motion for summary judgment on Counts I and VI of Plaintiff Trans Helicopter Service's ("THS") amended complaint. For the reasons below, we grant summary judgment on both counts.

BACKGROUND

Jet provides programs that fund the maintenance and repair of jet aircraft engines for the benefit of their customers who are the owners and operators of the jet aircraft engines. Jet does not personally provide engine maintenance and repair services, but rather provides a program to fund the services by third parties in the form of an engine maintenance service contract ("EMS Contract"). To obtain an EMS Contract, the customer must pay a one-time enrollment fee, an initial engine inspection fee and a monthly fee.

On or about December 29, 1997, Plaintiff Trans Helicopter Service ("THS") entered into an EMS Contract with Jet for both engines of a Cessna Citation II aircraft ("Contract 436-1"). Section V(d)(iv) of Contract 436-1 is pertinent for the fraud claim in the instant action and it outlines Jet's policy for early termination of the contract, allowing a credit towards a replacement aircraft when certain conditions are met. In relevant part, Section V(d)(iv) states:

In the event ... the Customer sells the Aircraft and the purchaser does not wish to enroll in the Program ... then the Customer shall be eligible for a credit (the "Credit") for certain amounts paid into the Trust to be applied toward any subsequently acquired aircraft (the "Replacement Aircraft") which the Customer enrolls in the Program. Once a Replacement Aircraft is accepted by [Jet] as being eligible for the Program, the Credit may be used to reduce the amount of the Pro Rata or Buy-In due on the Replacement Aircraft. The amount of the Credit shall be equal to 100% of all amounts paid with respect to the Engine(s) after deducting all expenditures made on behalf of, and expenses attributable to, the Engine(s).

On or about August 24, 1998, THS entered into another EMS Contract with Jet for coverage of both engines of a Falcon F100 aircraft ("Contract 476-1").

THS alleges that in or about February, 2001, THS contacted Jet to inform Jet that the aircraft covered by Contract 436-1 was sold to a new owner and contract 436-1 had not been transferred with the aircraft. THS claims that, pursuant to § V(d)(iv) of contract 436-1, THS requested the account balance of Contract 436-1 be transferred to Contract 476-1, which covered the Falcon F100 aircraft which was still owned by THS. According to THS, Jet contacted the new owner of the Cessna Citation II aircraft, Delta Romeo, Inc. ("Delta Romeo"), and induced Delta Romeo to assert a claim of ownership over Contract 436-1 against THS.

THS contends that around February of 2001 Jet decided not to transfer the balance from Contract 436-1 to Contract 476-1. In April of 2001, John Haskins ("Haskins"), President of Jet, wrote a letter to THS and Delta Romeo addressing certain issues and requesting that the parties resolve the dispute regarding Contract 436-1. Jet informed Trans H via letter dated May 2, 2001, that Contract 476-1 was being placed on "credit hold" due to arrearage in payments. From June 20, 2001, until March 5, 2002, Delta Romeo and THS litigated the issue of ownership to Contract 436-1 in the Northern District of Illinois (case number: 01 C 4684) ("Delta Romeo litigation"). The Delta Romeo litigation terminated when Delta Romeo filed a stipulation to dismiss the action with prejudice and on March 5, 2002, the court granted the motion to dismiss with prejudice and as part of the dismissal Jet was not required to transfer the trust balance to THS or Delta Romeo.

EXHIBIT

Gr. Ex. 2

*2 In a letter dated July 30, 2001, from Haskins to Michael Dreyfus, President of THS ("Haskins letter"), Haskins addressed certain issues in dispute between THS and Jet. THS claims that two particular statements within the letter give rise to their allegations of fraud, negligent misrepresentation and breach of fiduciary duty. THS claims that Jet promised that: (1) Jet would transfer a credit or "trust balance" owed to THS under Contract 436-1 to Contract 476-1, and (2) the trust balance equaled $40,571.12. THS contends that the balance was never transferred by Jet and that the balance of the trust account was in excess of $100,000. On September 14, 2001, Jet informed THS by letter that Contract 476-1 was being terminated for delinquent payments and in March of 2002, the contract was in fact cancelled.

On January 23, 2003, THS filed the instant action. On April 11, 2003, Jet filed a motion to dismiss the fraud claim (Count VI), the negligent misrepresentation claim (Count VII), and the breach of fiduciary duty claim (Count VIII). On March 30, 2004, we granted the motion to dismiss Counts VII and VIII of THS's amended complaint, and denied the motion to dismiss Count VI. Jet has now filed a motion for summary judgment on the breach of contract claim relating to Contract 436-1 (Count I) and on the fraud claim relating to Contract 436-1 (Count VI).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Id. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir.2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. Anderson, 477 U.S. at 255; Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir.2000).

## DISCUSSION

*3 Jet argues that we should bar the claims included in Counts I and VI under the doctrine of *res judicata* because the issues could have been raised and resolved in the Delta Romeo litigation. Jet also argues that the claims included in Counts I and VI should be barred because they were compulsory counterclaims in the Delta Romeo litigation.

### I. Doctrine of *Res Judicata*
The doctrine of *res judicata* is utilized by the courts to bar "relitigation of claims that were or could have been asserted in an earlier proceeding." D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York, 112 F.3d 257, 259 (7th Cir.1997). Three required elements for the doctrine of *res judicata* are: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a **final judgment** on the merits." Id. The doctrine of *res judicata* "is designed to ensure the finality of judicial decisions." Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593-97 (7th Cir.1986)(indicating that the doctrine is not "a mere matter of practice or procedure inherited from a more technical time than ours ... [but, rather][i]t is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts .....") (quoting Hart Steel Co. v. Railroad Supply Co. , 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917)). The doctrine of *res judicata* also "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Id. (quoting Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). In addition, the doctrine of *res judicata* has been deemed to be "essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if ... conclusiveness did not attend the judgments of such tribunals." Id. (quoting Alexander v. Chicago Park Dist., 773 F.2d 850, 853 (7th Cir.1985)).

### A. Identity of Parties
Jet argues that both Jet and THS were parties in the Delta Romeo litigation. Although Jet and THS were not the only parties in the Delta Romeo litigation we agree that there is an identity of the parties.

### B. Identity of Causes of Action
The Seventh Circuit uses the "same transaction test" to determine if there is an identity of the causes of action. Car Carriers, Inc., 789 F.2d at 593. Under the "same transaction test" the scope of a cause of action "consists of 'a single core of operative facts' which give rise to a remedy." ' Id. (quoting Alexander, 773 F.2d at 854). Thus, under the doctrine of *res judicata*, "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost ... [and] 'a mere change in the legal theory does not create a new cause of action." ' Id. (quoting in part Alexander, 773 F.2d at 854).

**\*4** Jet argues that in the Delta Romeo litigation Jet and Delta Romeo sought to have the court determine the parties' rights in relation to Contract 436-1. According to Jet, the claims brought by THS in the instant action relating to Jet's alleged breach of the contract and the alleged fraud concerning THS's right to the trust balance all could have been raised in the Delta Romeo litigation and, because the claims involved the same core of facts, the claims were required to be raised. Jet contends that the Delta Romeo litigation dealt with THS's right to the same trust balance that is at issue in the instant action. Jet claims that in the Delta Romeo litigation the court did not require Jet to transfer Contract 436-1 or any trust balance to THS or Delta Romeo

THS failed to directly address any of the elements for *res judicata* in its answer and instead provided a vague and convoluted dialogue concerning the similarity of the claims in the instant action and those in the Delta Romeo litigation. THS claims that "ownership of Contract 436-1 remained where it had been all along-with THS." (Ans.5). THS argues that the set of facts at issue in the Delta Romeo litigation "provides no basis for preclusion of THS's claims regarding JSSI's improper actions in connection with Contract 436-1 ... [and that] [n]othing in the Delta Romeo Litigation, including the Stipulation to Dismiss, even purported to address these matters." (Ans.5).

However, contrary to THS's assertions, the same core of facts and issues in the instant action in regards to Counts I and VI were raised in the Delta Romeo litigation. In Count I of the amended complaint in the instant action THS asserts that Jet breached Contract 436-1 by failing "to provide and/or pay for parts and labor for" scheduled and unscheduled "maintenance items submitted by THS...." (A.Compl.Par. 16(a)(b)). THS also asserts in Count I that Jet breached Contract 436-1 by improperly canceling the contract and refusing to provide a credit "toward and other aircraft and/or EMS Contract...." (A. Compl. Par 16). In Count VI of the amended complaint in the instant action THS asserts that Jet engaged in fraud in July of 2001 when Haskins falsely indicated by letter that the trust balance was being transferred from Contract 436-1 to 476-1. (A.Compl.Par. 50-51, 65).

Such matters are clearly intertwined with the facts included in the Delta Romeo litigation. For example, THS admits, pursuant to Local Rule 56.1, that in the Delta Romeo litigation, Jet brought an interpleader claim against Delta Romeo and THS to resolve Jet's liability regarding the trust account which is at issue in the instant action and that in the interpleader claim Jet denied any wrongdoing. (R SF 15). THS does not provide a denial as to these facts, but instead indicates that the allegation by Jet is "incomplete" and refers the court to the entire interpleader document. (R SF 15). Even if such a response could be considered a denial, it is an evasive response and THS failed to provide a citation to the page in the document that supported such a denial. *See* Local Rule 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at \*1 n. 1 (N.D.Ill.2003)(indicating that a 56.1 denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence."); *Jankovich v. Exelon Corp.*, 2003 WL 260714, at \*5 (N.D.Ill.2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Thus, THS acknowledges that in the Delta Romeo litigation that Jet brought the interpleader claim against Delta Romeo and THS in order to resolve the rights concerning Contract 436-1 and that in the claim Jet asserted that it was not guilty of any wrongdoing. Thus, that would have been the appropriate juncture for THS to bring its claims if THS believed that Jet had engaged in fraud and other wrongdoing concerning Contract 436-1.

**\*5** As indicated above, Contract 436-1 dealt with both engines of a Cessna Citation II aircraft. In the complaint in the Delta Romeo litigation, Delta Romeo specifically alleged that "JSSI has refused *either* to transfer the funds relating to the EMS contract to another THS aircraft *or* to allow Delta Romeo to use those funds with respect to the engines on the Citation II." (DR. Compl.Par. 23). Delta Romeo alleged in the Delta Romeo litigation that Jet wrote both to THS and Delta Romeo indicating that until THS and Delta Romeo resolved the rights concerning the trust funds, Jet would hold the balance in the trust. (DR. Compl.Par. 23). Delta Romeo further alleged that Jet "wrongfully refused to ... allow the balance of funds relating to the EMS contract to be used for the maintenance and service of the Citation II's engines." (DR. Compl.Par. 27). These are a few examples of why the core of operative facts in the Delta Romeo litigation and in the instant action are the same.

We also note that the Haskins letter that is the main piece of evidence relied upon by THS to support its fraud claim was allegedly dated July 30, 2001, which is well before the dismissal with prejudice in the Delta Romeo litigation. THS clearly could and should have brought the claims regarding Jet's alleged breach of contract and fraud relating to Contract 436-1 in the Delta Romeo litigation. Therefore, we conclude that there is an identity of the causes of action.

## C. Final Judgment

In the Delta Romeo litigation the case was dismissed with prejudice pursuant to a stipulation. THS has not responded at all to Jet's contention that the dismissal with prejudice constitutes a **final judgment** for **res judicata** purposes. The Seventh Circuit has made it clear that if a suit is "dismissed with prejudice, any issue concerning the bar of the statute of limitations to the **refiling** of the suit would be moot because a suit that has been dismissed with prejudice cannot be **refiled**; the **refiling** is blocked by the doctrine of **res judicata**." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7 <sup>th</sup> Cir.2000). However, in regards to the doctrine of **res judicata** the Seventh Circuit has also stated that "[t]he test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground such as failure to exhaust administrative remedies when exhaustion is not a jurisdictional requirement ... [but, rather the] test is whether the district court has finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144-1145 (7th Cir.2003); *See also Golden v. Barenborg*, 53 F.3d 866, 871 (7th Cir.1995) (finding that there was a **final judgment** for **res judicata** purposes where plaintiff agreed to a stipulated dismissal with prejudice). Under either standard elucidated by the Seventh Circuit, we find that there was a **final judgment** in the Delta Romeo litigation for **res judicata** purposes.

## D. Further Considerations

**\*6** As indicated above, all of the elements for the doctrine of *res judicata* are met in regards to the instant action. We also conclude that the interests of the courts are served by the application of the doctrine of *res judicata* in this action and such a ruling promotes fairness and the administration of justice. It would be unfair after the resolution of the issues surrounding THS and Contract 436-1 in the Delta Romeo litigation, for THS to years later spring claims upon Jet that were or could have been addressed in the Delta Romeo litigation. It was necessary for THS to bring its claims at that juncture to ensure finality regarding the Contract 436-1 ownership and all issues surrounding the same core of facts and to avoid future vexatious litigation by THS. The interests of the efficient operation of the judicial system and judicial economy would have been served had THS brought its claims when they were on the forefront in the Delta Romeo action.

*II. Compulsory Counterclaims*
Jet argues that the claims included in Counts I and VI should be barred because, even if they are not barred under the doctrine of *res judicata*, the claims were compulsory counterclaims in the Delta Romeo litigation and could and should have been raised in the Delta Romeo litigation. Federal Rule of Civil Procedure 13(a) states the following:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Fed.R.Civ.P.13(a). The goal in creating Rule 13(a) was to promote "judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensure from a common factual background." *In re Price*, 42 F.3d 1068, 1073 (7th Cir.1994). *Id.* In determining whether Rule 13(a) applies "[t]he inquiry is not intended to be 'a wooden application of the common transaction label,' but rather a careful examination of the factual allegations underlying each claim in determining whether the test is met." *In re Price*, 42 F.3d 1068, 1073 (7th Cir.1994)(quoting *Burlington Northern R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir.1990)). A compulsory counterclaim is a counterclaim "that must be filed to preserve the defendant's rights ... [and] if made the basis of a separate suit it would be barred either by the force of Rule 13(a) itself, or by the prohibition in the doctrine of res judicata against splitting one's cause of action ." *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1367 (7th Cir.1990). The Seventh Circuit utilizes the "logical relationship" test to determine whether or not a "transaction or occurrence" is the same under Rule 13(a). *Burlington Northern R. Co.*, 907 F.2d at 711. Under the test "the words 'transaction or occurrence' should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a) ... [and] [a]s a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship...." *Id.*

**\*7** THS argues that any claims that it would have had against Jet in the Delta Romeo litigation would have been permissive cross-claims rather than counter-claims and THS argues that cross claims are not required to be raised. In regards to cross claims Federal Rule of Civil Procedure 13(g) states the following:

(g) Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed.R.Civ.P. 13(g). Jet responds by arguing that in the Delta Romeo litigation Jet asserted an interpleader claim against THS and Jet became the interpleader-plaintiff. According to Jet, at that juncture Jet and THS became opposing parties with respect to Contract 436-1 and the trust balance. Jet also contends that since it filed the interpleader claim, which was a cross-claim, THS was obligated to respond with cross-claims against Jet that THS could and should have brought. According to Jet, once a cross-claim is filed, the co-parties become opposing parties for the purposes of compulsory counter-claims.

We agree with the reasoning presented by Jet. A counterclaim is not limited to a claim brought by a defendant against a plaintiff. Rather a counterclaim is defined merely as "[a] claim for relief asserted against an opposing party after an original claim has been made...." BLACK'S LAW DICTIONARY 353 (7th ed.1999). This definition is consistent with the reference in Federal Rule of Civil Procedure 13(a) to an "opposing party" rather than to a plaintiff and defendant. Fed.R.Civ.P. 13(a). While the initial filing of a crossclaim in an action is permissive, once the cross claim is filed, it is a claim like any other claim in an action. Thus, the compulsory counterclaim provisions would logically apply to any counterclaims that could be brought in response to a crossclaim. As indicated above, Rule 13(a) is intended to promote judicial economy and to ensure that all claims relating to a set of facts are resolved together. Thus, such goals would only be served by requiring responsive compulsory counterclaims to be filed when a crossclaim is filed because the court will necessarily have to address the issues and facts connected to the crossclaim. If the court is going to address the merits of the crossclaim, then all of the same goals behind Rule 13(a) would apply to ensuring that related responsive claims to the crossclaim are resolved in the same action as the crossclaim.

THS contends that its responsive claim to Jet's crossclaim in the Delta Romeo litigation is a cross claim and is governed by Rule 13 (g). However, in reality such a claim by THS would be both a crossclaim and a counterclaim, and thus, the claim would need to comply with both Rule 13(g) and Rule 13(a). Although Rule 13(g) would only render its filing permissive, THS would also need to comply with Rule 13(a) which renders the claim mandatory. Courts in other Circuits have agreed with this application of Rule 13(a) to crossclaims. See e.g. *Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Hawaii, L.P.*, 158 F.R.D. 656, 659 (D.Hawai'i 1994). The facts and issues included in the Delta Romeo litigation were such that THS's claims in response to the crossclaim by Jet were

compulsory counterclaims and THS thereby waived its right to file such claims by not doing so in the Delta Romeo litigation. *See Burlington Northern R.Co.,* 907 F.2d at 710 (recognizing that the compulsory counterclaim rule is a "harsh rule," but stating that "the rule serves a valuable role in the litigation process, especially in conserving judicial resources" and, in balancing the "competing interests[,] ... [t]he convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy."). Therefore, even if the claims asserted by THS in Counts I and VI were not barred by the doctrine of *res judicata* we would find that they are barred because they were compulsory counterclaims in the Delta Romeo litigation.

CONCLUSION

**\*8** Based on the foregoing analysis we grant Jet's motion for summary judgment on Counts I and VI. Counts II, III, IV, and V remain alive in this action.

N.D.Ill.,2004.
Trans Helicoptere Service v. Jet Support Services, Inc.
Not Reported in F.Supp.2d, 2004 WL 2921856 (N.D.Ill.)


Motions, Pleadings and Filings (Back to top)

• 2004 WL 2815799 (Trial Pleading) Answer of Trans Helicoptere Service to the Counterclaim of Jet Support Services, Inc. (Oct. 5, 2004) 🖼 Original Image of this Document (PDF)
• 2004 WL 2815781 (Trial Pleading) Answer of Trans Helicoptere Service to the Counterclaim of Jet Support Services, Inc. (Sep. 29, 2004) 🖼 Original Image of this Document (PDF)
• 2004 WL 2815791 (Trial Pleading) Defendantant's Answer to Amended Complaint and Counterclaim (Sep. 2004) 🖼 Original Image of this Document (PDF)
• 2004 WL 2815766 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Statement of Additional Facts (Jun. 8, 2004)
• 2004 WL 2815774 (Trial Motion, Memorandum and Affidavit) Defendant's Reply in Further Support of Its Motion for Summary Judgment (Jun. 8, 2004)
• 2004 WL 2815756 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment on Counts I and VI of the Amended Complaint (Jun. 1, 2004)
• 2004 WL 2815759 (Trial Motion, Memorandum and Affidavit) Response and Statement of Additional Facts of Trans Helicoptere Service to the Defendant's Statement of Facts in Support of Its Motion for Summary Judgment on Counts I and VI (Jun. 1, 2004)
• 2004 WL 2815747 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Summary Judgment on Counts I and VI (May 24, 2004)
• 2003 WL 23927480 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Support of Its Motion to Dismiss Counts VI Through VIII of Plaintiff's Amended Complaint With Prejudice (Jul. 11, 2003)
• 2003 WL 23927476 (Trial Pleading) Amended Complaint (Jun. 11, 2003) 🖼 Original Image of this Document (PDF)
• 2003 WL 23927463 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Statement of Additional Facts (Jun. 6, 2003)
• 2003 WL 23927468 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum in Further Support of Its Motion for Summary Judgment. (Jun. 6, 2003)
• 2003 WL 23927471 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment on Counts I and VI Through VIII of the Complaint (May 23, 2003)
• 2003 WL 23927448 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Support of Its Motion for Summary Judgment on Counts I and VI Through VIII of Plaintiff's Complaint (Apr. 11, 2003)
• 2003 WL 23927452 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Support of Its Motion to Dismiss Counts VI Through VIII of Plaintiff's Complaint With Prejudice (Apr. 11, 2003)
• 1:03CV00498 (Docket) (Jan. 23, 2003)
• 2003 WL 23927435 (Trial Pleading) Complaint (2003) 🖼 Original Image of this Document with Appendix (PDF)
• 2003 WL 23927441 (Trial Pleading) Defendant's Answer to Complaint and Counterclaim (2003) 🖼 Original Image of this Document (PDF)
END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 5277 | **DATE** | 1/2/2008 |
| **CASE TITLE** | CHAPARRO vs. POWELL, et al. | | |

**DOCKET ENTRY TEXT**

The City of Chicago's motion to dismiss Count IX of the complaint [32] is granted. The motion to bifurcate discovery [34] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

Notices mailed by Judicial staff.

| | Courtroom Deputy Initials: | WH |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY CHAPARRO | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 07 C 5277 |
| OFFICER P. O. POWELL (STAR NO. 11570), | ) |
| OFFICER M. J. BUTZEN (STAR NO. 11307), | ) Suzanne B. Conlon, Judge |
| OFFICER A. E. ACEVEZ (STAR NO. 18154), | ) |
| HAZEL HOLMES, and the CITY OF | ) |
| CHICAGO, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jerry Chaparro brings this 42 U.S.C. § 1983 action against the City of Chicago ("the city") and four individual defendants, including three Chicago Police Department ("CPD") officers. He alleges the individual defendants subjected him to an unreasonable seizure in violation of the Fourth Amendment and other constitutional injuries. In Count IX, he alleges the city is liable for these violations under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The city moves for dismissal of Count IX under Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

### I.    Chaparro's Arrest

Chaparro alleges the individual defendants arrested him without probable cause, subjecting him to an unreasonable seizure in violation of the Fourth Amendment. Cmplt. ¶¶ 6-9. He claims he was arrested because he attempted to photograph his car inside a city impound lot. *Id.* at ¶ 117. He asserts he had a right to photograph his car and committed no crime. *Id.* at ¶¶

10, 116-20.  He further alleges the defendant officers used excessive force in arresting him and conspired to cover up their misconduct.  *Id.* at ¶ 17.

## II.   City Policy or Custom

Chaparro alleges a city policy or custom comprising a litany of police misconduct including:  abuse of authority, use of excessive force, failure to discipline officers for misconduct, concealing police misconduct, failure to properly investigate or remedy police misconduct, failure to provide training to prevent police misconduct, and arresting citizens who photograph cars inside city impound lots.  *Id.* at ¶ 21.  He alleges misconduct among CPD special operations officers, none of whom was involved in Chaparro's arrest; the Office of Professional Standards' inadequate oversight of CPD officers; the misconduct of four CPD officers, none of whom was involved in Chaparro's arrest; general "lawlessness" among CPD officers, citing allegations of torture "from the 1980's [and] the 1990's;" and the city's abandonment of a software program intended to predict misconduct among CPD officers.  *Id.* at ¶¶ 24-82.

## DISCUSSION

### I.   Legal Standards

#### a.   Fed.R.Civ.P. 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  To meet this requirement, (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests" and (2) the complaint's factual allegations "must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level."  *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)

2

(quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)) (ellipsis and quotation marks omitted). A complaint must provide factual support for its claims, not merely "labels and conclusions." *Bell Atl.*, 127 S.Ct. at 1965. This requirement ensures a defendant has information sufficient to prepare his defense and "allow[s] the court to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got rid of immediately . . . ." *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999); *accord Bell Atl.*, 127 S.Ct. at 1966-67.

In weighing a 12(b)(6) motion, the court must accept all the complaint's well pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Cler v. Illinois Ed. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). A court need not draw inferences in a plaintiff's favor that are "too attenuated to be reasonable." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (superseded by statute on other grounds).

### b. Municipal Liability under *Monell*

A municipality is liable under *Monell* if its policy or custom is the "moving force" behind a constitutional violation. *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 400 (1997). To prevail on a *Monell* claim, a plaintiff must establish (1) a violation of his constitutional rights; (2) the existence of a municipal policy or custom; and (3) "a direct causal link" between that policy or custom and his injury. *Id.* at 403-04; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Three types of municipal policy can support a *Monell* claim: (1) an express policy, (2) a well settled, widespread practice or custom, or (3) a decision by a municipal official with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The standards for proving culpability and causation in this context

3

are "rigorous . . . to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Commissioners*, 520 U.S. at 405. *Monell* does not subject municipalities to *respondeat superior* liability. *Id.* at 403.

## II.   Analysis

Chaparro bases his *Monell* claim on an alleged widespread practice or custom he terms the "code of silence," which roughly equates to a city-wide acceptance of police misconduct. Response at 2. He claims the code of silence caused the individual defendants to violate his constitutional rights because it reassured them they would not be punished for malfeasance. He relies on instances of CPD misconduct spanning two decades not directly related to his arrest.

The city argues Chaparro fails to establish the existence of a cognizable municipal policy or custom that encompasses the wide spectrum of alleged misconduct. The city also argues Chaparro fails to demonstrate a causal link between the policy he alleges and his arrest. It contends Count IX does not identify a policy or custom "closely related to [Chaparro's] ultimate injury," rendering Chaparro's *Monell* theory *respondeat superior* by another name. *Id.* at ¶ 8 (quoting *City of Canton*, 489 U.S. at 391). The city points out that the bulk of Chaparro's factual allegations have, at best, a tenuous relationship to his arrest. The complaint contains numerous allegations regarding misconduct by CPD special operations officers, but none of the individual defendants is a special operations officer.

Count IX is deficient. The factual allegations fail to plausibly suggest a policy cognizable under *Monell*. The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. *See Bd. of County Commissioners*, 520 U.S. at 403. Chaparro relies on a purported "code of silence" based on

4

numerous, tenuously related instances of police misconduct. But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom. Under Chaparro's logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment. Chaparro's *Monell* theory collapses into *respondeat superior*, an outcome explicitly forbidden by the Supreme Court.

Nor do Chaparro's allegations plausibly suggest a direct causal link between a municipal policy and his injury. He asserts a general lawlessness among CPD officers caused the violations surrounding his arrest. But he provides no facts to show that link; and the policy he alleges is so nebulous that any connection to a particular constitutional violation is highly attenuated. Indeed, the injury Chaparro allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct. As the city notes, Chaparro's attorney has demonstrated this fact by including identical *Monell* allegations in at least six other § 1983 cases against the city alleging different instances of alleged police misconduct.[1]

---

[1] *See* Farley v. Wilke, No. 07 C 5254, Dkt. No. 1 (N.D. Ill. Sep. 17, 2007) (Gottschall, J.); Martin v. Quinn, No. 07 C 4991, Dkt. No. 1 (N.D. Ill. Sep. 5, 2007) (Guzman, J.); Jones v. Unknown Officers, No. 07 C 5279, Dkt. No. 1 (N.D. Ill. Sep. 18, 2007) (Norgle, J.); Safford v. Janik, No. 07 C 5276, Dkt. No. 1 (N.D. Ill. Sep. 18, 2007) (Coar, J.); McComb v. Unknown Officers, No. 07 C 5564, Dkt. No. 1 (N.D. Ill. Oct. 2, 2007) (Marovich, J.); Moumji v. Officer with star number 2351, 07 C 5256, Dkt. No. 1 (N.D. Ill. Sep. 17, 2007) (Lefkow, J.).

## CONCLUSION

The motion to dismiss Count IX is granted. The city's motion to bifurcate discovery is moot.

ENTER:

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge

January 2, 2008

6